UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

| | | |
|---|---|---|
| MARIA R.,[1] | ) | NO. CV 19-3437-KS |
| Plaintiff, | ) | |
| v. | ) | MEMORANDUM OPINION AND ORDER |
| | ) | |
| ANDREW M. SAUL,[2] Commissioner of Social Security, | ) | |
| Defendant. | ) | |
| _____ | ) | |

## INTRODUCTION

Maria R. ("Plaintiff") filed a Complaint on April 26, 2019, seeking review of the denial of her application for a period of disability and disability insurance ("DI") and supplemental security income ("SSI"). On May 31, 2019, the parties consented, pursuant to 28 U.S.C. § 636(c), to proceed before the undersigned United States Magistrate Judge. (Dkt. Nos. 9, 10, 11.) On April 10, 2020, the parties filed a Joint Stipulation ("Joint Stip."). (Dkt. No. 19.)

---

[1] Partially redacted in compliance with Federal Rule of Civil Procedure 5.2(c)(B) and the recommendation of the Committee on Court Administration and Case Management of the Judicial Conference of the United States.

[2] The Court notes that Andrew M. Saul is now the Commissioner of the Social Security Administration. Accordingly, pursuant to Rule 25(d) of the Federal Rules of Civil Procedure, the Court orders that the caption be amended to substitute Andrew M. Saul for Nancy A. Berryhill as the defendant in this action.

Plaintiff seeks an order reversing the Commissioner's decision and awarding benefits, or, in the alternative, remanding for further proceedings. (Joint Stip. at 17-18.) The Commissioner requests that the ALJ's decision be affirmed or, in the alternative, remanded for further proceedings. (*See id.* at 18-19.) The Court has taken the matter under submission without oral argument.

## SUMMARY OF ADMINISTRATIVE PROCEEDINGS

In April 2015, Plaintiff, who was born on January 5, 1964, protectively filed applications for DI and SSI respectively.[3] (*See* Administrative Record ("AR") 365-66, 367-68; Joint Stip. at 2.) Plaintiff alleged disability commencing October 1, 2013 due to: "fibromyalgia; arthritis in neck and lower back; and bilateral carpal tunnel." (AR 385.) Plaintiff previously worked as a cook (DOT 313.361-014), janitor (DOT 381.687-018), and caregiver (DOT 354.377-014). (AR 29, 223, 386.) The Commissioner denied Plaintiff's applications initially (AR 244-45) and on reconsideration (AR 264-65). Plaintiff then requested an administrative hearing. (*See* AR 280.) On December 11, 2017, Administrative Law Judge John Tobin (the "ALJ") held a hearing at which Plaintiff, who was represented by counsel, testified as did vocational expert Linda Berg (the "VE"). (AR 204-227.) On April 2, 2018, the ALJ issued an unfavorable decision, denying Plaintiff's applications. (AR 19-31.) On February 28, 2019, the Appeals Council denied Plaintiff's request for review. (AR 1-7.)

## SUMMARY OF ADMINISTRATIVE DECISION

The ALJ found that Plaintiff met the insured status requirements of the Social Security Act through December 31, 2019. (AR 24.) The ALJ further found that Plaintiff had not

---

[3] Plaintiff was 49 years old on the alleged onset date and was thus defined as a younger person under agency regulations. *See* 20 C.F.R. §§ 404.1563(c), 416.963(c). She has now changed age categories twice and is currently categorized as a person of advanced age. *Id.* §§ 404.1563(e), 416.963(e).

engaged in substantial gainful activity since the alleged onset date of October 1, 2013. (AR 24.) The ALJ determined that Plaintiff had the following severe impairments: "degenerative disc disease of the cervical spine and right sided carpal tunnel syndrome." (AR 24.) In reaching that conclusion, the ALJ found that Plaintiff had other medically determinable impairments—migraines and diabetes—but he determined that these impairments were non-severe for the purposes of step two of the sequential analysis. (AR 24-25.) The ALJ also concluded that Plaintiff did not have an impairment or combination of impairments that met or medically equaled the severity of any impairments listed in 20 C.F.R. part 404, subpart P, appendix 1 (20 C.F.R. §§ 404.1520(d), 404.1525, 404.1526, 416.920(d), 416.925, 416.926). (AR 25.) The ALJ determined that, during the relevant period, Plaintiff had the residual functional capacity ("RFC") to perform a full range of light work.[4] (AR 25.)

The ALJ found that Plaintiff was unable to perform any of her past relevant work. (AR 29-30.) However, the ALJ determined that, considering Plaintiff's age, education, work experience, and residual functional capacity, Plaintiff had acquired work skills from past relevant work that were transferable to other occupations, which Plaintiff could perform, and which exist in significant numbers in the national economy, including the representative occupations of lunch cook (DOT 317.684-014), short order cook (DOT 313.374-014), and companion (DOT 309.677-010). (AR 30-31; *see also* AR 225.) Accordingly, the ALJ determined that Plaintiff had not been under a disability, as defined in the Social Security Act, from the alleged onset date through the date of his decision, April 2, 2018. (AR 31.)

\\
\\
\\
\\

---

[4] Light work involves lifting up to 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. SOCIAL SECURITY ADMINISTRATION, PROGRAM OPERATIONS MANUAL SYSTEM ("POMS") DI 25001.001. Light work also requires a good deal of walking or standing, or, alternatively, sitting most of the time with some pushing and pulling of arm or leg controls. *Id.*

## STANDARD OF REVIEW

Under 42 U.S.C. § 405(g), this Court reviews the Commissioner's decision to determine whether it is free from legal error and supported by substantial evidence in the record as a whole. *Orn v. Astrue*, 495 F.3d 625, 630 (9th Cir. 2007). "Substantial evidence is 'more than a mere scintilla but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Gutierrez v. Comm'r of Soc. Sec.*, 740 F.3d 519, 522-23 (9th Cir. 2014) (internal citations omitted). "Even when the evidence is susceptible to more than one rational interpretation, we must uphold the ALJ's findings if they are supported by inferences reasonably drawn from the record." *Molina v. Astrue*, 674 F.3d 1104, 1110 (9th Cir. 2012).

Although this Court cannot substitute its discretion for the Commissioner's, the Court nonetheless must review the record as a whole, "weighing both the evidence that supports and the evidence that detracts from the [Commissioner's] conclusion." *Lingenfelter v. Astrue*, 504 F.3d 1028, 1035 (9th Cir. 2007) (internal quotation marks and citation omitted); *Desrosiers v. Sec'y of Health and Hum. Servs.*, 846 F.2d 573, 576 (9th Cir. 1988). "The ALJ is responsible for determining credibility, resolving conflicts in medical testimony, and for resolving ambiguities." *Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th Cir. 1995).

The Court will uphold the Commissioner's decision when the evidence is susceptible to more than one rational interpretation. *Burch v. Barnhart*, 400 F.3d 676, 679 (9th Cir. 2005). However, the Court may review only the reasons stated by the ALJ in her decision "and may not affirm the ALJ on a ground upon which [s]he did not rely." *Orn*, 495 F.3d at 630; *see also Connett v. Barnhart*, 340 F.3d 871, 874 (9th Cir. 2003). The Court will not reverse the Commissioner's decision if it is based on harmless error, which exists if the error is "'inconsequential to the ultimate nondisability determination,' or if despite the legal error,

'the agency's path may reasonably be discerned.'" *Brown-Hunter v. Colvin*, 806 F.3d 487, 492 (9th Cir. 2015) (internal citations omitted).

## DISCUSSION

There is one issue in dispute: whether the ALJ properly considered Plaintiff's statements about her symptoms and limitations. (Joint Stip. at 4.)

### I. Plaintiff's Statements

On December 11, 2017, Plaintiff, who alleged an onset date of October 1, 2013, provided the following testimony before the ALJ.[5] Plaintiff testified that she stopped working as a janitor because her company closed, not because of her impairments, but she did not believe she would be able to do that work again because of the pain in her hands and neck. (AR 218.)

The ALJ asked Plaintiff what aspects of her impairment would make it difficult for her to work in two-hour increments for an eight-hour workday. (AR 212-13.) Plaintiff stated that she is unable to sit for four hours at a time because she "start[s] feeling pain" in her hands and neck that migrates to her lower back. (AR 213.) She testified that "mainly it's the pain" that would interfere with her ability to work a full eight-hour day. (AR 212.) Plaintiff also testified that the pain in her hands and the pain from standing up would restrict her ability to maintain

---

[5] Previously, on June 11, 2015, Plaintiff told the consultative examiner, John Sedgh, M.D., internist, that she experienced pain and numbness of the right hand that caused her drop objects. (AR 498.) Plaintiff also complained to Dr. Sedgh of experiencing upper back, lower back, and right knee problems, which she said were exacerbated by carrying objects but also improved with medication. (AR 498.) Earlier that month, on June 1, 2015, Annie May Torres Diego, M.D., with Kaiser Permanente, directed Plaintiff to stop caring for her twin grandchildren and cleaning offices for 2-3 days prior to receiving a cervical epidural steroid injection, but Dr. Diego assessed no long-term restrictions or limitations. (AR 633-34.) Later that same year, on October 26, 2015, Plaintiff reported to her physical therapist, Travis Smith, P.T., that she had a job cleaning offices in the evenings, which she described as involving a lot of bending, and that, during the day, she performed childcare activities. (AR 762.) Plaintiff also reported to Smith that she walked for 30 minutes every day for recreation. (AR 762.)

a consistent pace. (*See* AR 213.) Plaintiff testified that she could stand for four hours before needing to sit down. (AR 213.) She testified that she could sit for five hours before needing to stand up and move. (AR 213-14.) Plaintiff testified that, using two hands, she is able to lift a gallon of milk but she cannot lift more than 10-20 pounds at a time. (AR 218.)

When asked about her typical day, Plaintiff testified that she spends most of her days sitting and does not need to elevate her legs. (AR 214-15.) Plaintiff testified that she is married and typically does the housework. (AR 215.) She testified that, because of her impairments, she is no longer able to do the mopping and vacuuming. (AR 215-16.) However, she tries to make the beds on a daily basis. (AR 216.) Plaintiff testified that she has difficulty getting out of bed—specifically, she needs to sit for five to six minutes, mainly because of her neck. (AR 211.) Plaintiff testified that she has a "little bit" but "not a lot" of difficulty" getting dressed. (AR 211.)

The ALJ also asked Plaintiff about her treatment. (AR 219.) Plaintiff testified that her doctors had offered her injections and also surgery, but she had elected not to do surgery because of the risk of potential paralysis and because her doctor did not think surgery was a good idea at the time. (AR 219-20.)

**II.     The ALJ's Decision**

The ALJ found that Plaintiff had the residual functional capacity ("RFC") to perform a full range of light work—that is, work that requires lifting up to 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds and either a good deal of walking or standing or, alternatively, sitting most of the time with some pushing and pulling of arm or leg controls. (AR 25); *see also* SOCIAL SECURITY ADMINISTRATION, PROGRAM OPERATIONS MANUAL SYSTEM ("POMS") DI 25001.001. In reaching this conclusion, the ALJ found that Plaintiff's medically determinable impairments could be reasonably expected

to cause the alleged symptoms and limitations. (*See* AR 28.) Nevertheless, the ALJ concluded that Plaintiff's allegations of disabling symptoms and limitations were not supported by her description of her daily activities (AR 26) and the objective findings in the case (AR 26-28). The ALJ also observed that Plaintiff repeatedly declined treatment offered by her doctors in favor of more conservative treatment and natural healers. (AR 27-28.) He ultimately stated that that Plaintiff's treatment history "is not well-documented, and [she] has been conservatively managed with some moderate improvement." (AR 29.)

### III. Applicable Law

An ALJ must make two findings before discounting a claimant's statements regarding the severity and persistence of her symptoms. *See Treichler v. Comm'r of Soc. Sec.*, 775 F.3d 1090, 1102 (9th Cir. 2014). "First, the ALJ must determine whether the claimant has presented objective medical evidence of an underlying impairment which could reasonably be expected to produce the pain or other symptoms alleged." *Id.* (quoting *Lingenfelter*, 504 F.3d at 1036). "Second, if the claimant has produced that evidence, and the ALJ has not determined that the claimant is malingering, the ALJ must provide specific, clear and convincing reasons for rejecting the claimant's testimony regarding the severity of the claimant's symptoms" and those reasons must be supported by substantial evidence in the record. *Id.*; *see also Marsh v. Colvin*, 792 F.3d 1170, 1174 n.2 (9th Cir. 2015); *Carmickle v. Comm'r of Soc. Sec.*, 533 F.3d 1155, 1161 (9th Cir. 2008).

In March 2016, the Commissioner promulgated Social Security Ruling ("SSR") 16-3p, 2017 WL 5180304, which "makes clear what [Ninth Circuit] precedent already required: that assessments of an individual's testimony by an ALJ are designed to 'evaluate the intensity and persistence of symptoms' . . . and not to delve into wide ranging scrutiny of the claimant's character and apparent truthfulness." *Trevizo v. Berryhill*, 871 F.3d 664, 678 n.5 (9th Cir. 2017). Under SSR 16-3p, the ALJ shall determine whether to credit a claimant's statements

about his pain and limitations by referring to the factors set forth in 20 C.F.R. §§ 404.1529(c)(3) and 416.929(c)(3), which include: the claimant's daily activities; the factors that precipitate and aggravate the symptoms; the type, dosage, effectiveness, and side effects of any medication taken to alleviate the symptoms; the claimant's treatment, other than medication, for the symptoms; any other measure that the individual uses to relieve pain or other symptoms; and, finally, "any other factors concerning an individual's functional limitations and restrictions." SSR 16-3p. However, the lack of objective medical evidence supporting a claimant's allegations cannot provide the sole basis for rejecting her statements about the severity of her symptoms and limitations. *Id.*; *see also Trevizo*, 871 F.3d at 679; 20 C.F.R. §§ 404.1529(c)(2), 416.929(c)(2) ("we will not reject your statements about the intensity and persistence of your pain or other symptoms or about the effect your symptoms have on your ability to work solely because the available objective medical evidence does not substantiate your statements").

**IV.   Analysis**

Because the purported inconsistency between Plaintiff's subjective complaints and the objective evidence is not, by itself, a legally sufficient reason for declining to credit Plaintiff's subjective symptom allegations, the validity of the ALJ's decision not to credit Plaintiff's statements in full depends on whether either of his other two rationales—*i.e.*, Plaintiff's daily activities and her reliance on conservative treatment and natural healing (with moderate improvement)—is a clear and convincing reason supported by substantial evidence in the record. However, before starting this inquiry, the Court notes that it is unclear to what extent Plaintiff discounted any portion of Plaintiff's statements. Plaintiff, who carries the burden at steps one through four of the sequential analysis, including establishing that she does not have the RFC to perform past relevant work, *see Lewis v. Apfel*, 236 F.3d 503, 515 (9th Cir. 2001); *Valentine v. Comm'r of Soc. Sec.*, 575 F.3d 685, 689 (9th Cir. 2009), did not provide the Commissioner with many descriptions of her symptoms, limitations, or daily

8

activities. What little information she provided through her testimony indicated that she retains the ability to: sit or stand for at least four consecutive hours at a time and, indeed, spends most of a typical day sitting at home; get out of bed; get dressed; do housework, including making beds on a daily basis; and lift up to 20 pounds. The only activities Plaintiff reported being unable to perform because of her impairments are mopping and vacuuming. It is not readily apparent to the Court how the ALJ's assessment of Plaintiff's RFC—that Plaintiff can perform light work, *i.e.*, sitting, standing, and lifting up to 20 pounds occasionally—is inconsistent with these reports.

Nevertheless, assuming *arguendo* that Plaintiff's reported activities *are* inconsistent with her statements about her symptoms and limitations, an ALJ is entitled to rely on a plaintiff's activities to discount the plaintiff's statements only if those activities either: (1) "contradict" the plaintiff's testimony; or (2) "meet the threshold for transferable work skills"—that is, where the plaintiff "is able to spend a substantial part of his or her day performing household chores or other activities that are transferable to a work setting." *Orn*, 495 F.3d at 639. Here, the ALJ suggested that Plaintiff's activities provide "little evidence" that her limitations are "disabling" as alleged. (*See* AR 26.) The Court agrees. As stated above, Plaintiff identified only two activities that her impairments preclude her from performing: mopping and vacuuming. Without more, Plaintiff has not alleged a reduction in daily activities that is consistent with her allegations of disabling impairments.

Furthermore, the record reveals that Plaintiff engaged in multiple activities during the alleged period of disability that conflict with her allegations of disabling symptoms and limitations. In June 2015, almost two years after the alleged onset date, Plaintiff indicated to her doctor, Annie May Torres Diego, with Kaiser Permanente that she was trying to "do more yoga" (AR 640) and that her regular activities included caring for her twin grandchildren during the day and cleaning offices at night (AR 633-34). Dr. Diego instructed Plaintiff to stop caring for her grandchildren and doing janitorial work 2-3 days prior to receiving a

cervical epidural steroid injection, but she did not assess any other restrictions on Plaintiff's ability to engage in these activities. (*See generally id.*) Dr. Torres also advised Plaintiff to continue doing yoga and daily stretching. (AR 640.) Later that same year, on October 26, 2015, Plaintiff reported to her physical therapist, Travis Smith, P.T., that she walks for 30 minutes a day recreationally, works in the evening cleaning offices, which involves a lot of bending, and, during the day, does childcare. (AR 762.) Plaintiff's ability to walk recreationally, do yoga, clean offices in the evening, and take care of twin grandchildren during the alleged period of disability supports the ALJ's conclusion that Plaintiff's daily activities are not consistent with her allegations of disabling impairments.

In light of the foregoing, the Court finds no error in the ALJ's decision to discount Plaintiff's statements about her symptoms and limitations to the extent that they are inconsistent with the ALJ's assessment of Plaintiff's RFC. Because the ALJ articulated at least one clear and convincing reason supported by substantial evidence in the record for discounting Plaintiff's statements, any error by the ALJ in finding that Plaintiff's statements are also inconsistent with the objective medical evidence and with her treatment history is necessarily harmless, and the ALJ's decision must be AFFIRMED.

## CONCLUSION

For the reasons stated above, the Court finds that the Commissioner's decision is supported by substantial evidence and free from material legal error. Neither reversal of the ALJ's decision nor remand is warranted.

Accordingly, IT IS ORDERED that Judgment shall be entered affirming the decision of the Commissioner of the Social Security Administration.

\\
\\

IT IS FURTHER ORDERED that the Clerk of the Court shall serve copies of this Memorandum Opinion and Order and the Judgment on counsel for plaintiff and for defendant.

LET JUDGMENT BE ENTERED ACCORDINGLY.

DATE: May 8, 2020

_____
KAREN L. STEVENSON
UNITED STATES MAGISTRATE JUDGE